CHARLES BURNELL HARNISH *v.* STATE
OF MARYLAND

[No. 370, September Term, 1969.]

*Decided June 24, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James T. Smith* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Charles E. Foos, III, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Charles Burnell Harnish, was convicted in a non-jury trial in the Circuit Court for Baltimore County of committing an unnatural and perverted sex act. He received a sentence of five years under the jurisdiction of the Department of Correction.

In this appeal, it is contended, and we agree, that the

lower court committed reversible error in permitting the mother to relate a conversation she had with the victim of the alleged crime, her five year old son, concerning what occurred between him and the appellant some eleven days earlier.

The record indicates that late in the afternoon of January 3, 1969, the victim and his seven year old foster brother were given permission by their mother to visit the appellant, a 54-year old neighbor, who had invited them to his apartment dwelling to see "his Christmas tree and Christmas lights."

The mother was permitted to testify, over objection, that on January 14, 1969, the appellant came to her home, stated that he had a "swivel holster" which her son, Edward, could have for his toy pistol and, if agreeable with the mother, to "send him over." According to the mother:

> "A. * * * I said, okay, and I started to get Eddie ready to go, and Eddie said, 'Mommy, you are going to get mad at me', and I said, 'Why?' He says, 'You are going to get mad at me'. And I says, 'No, I won't.' He says, 'I don't want to go'. And I says, 'Why not?' And he told me, he says that Mister—he says, 'Charlie makes me suck on his wee-wee'.
>
> Q. All right, now, what does Edward's word wee-wee, mean?
>
> A. Penis of a man.
>
> Q. Then, what else did Edward say, if anything?
>
> A. He said—and I asked him about it, and I asked him how many times, and he said, 'Three'. I says, 'More than this last time'. I asked him when. He says when he took him over there the last time, and then I went on to ask him some questions about when, how many times, three times, and asked him what happened, details about what happened, and I didn't let him go. I wouldn't let him go,

"and I was afraid he would come back, so I left the house with Eddie."

At the conclusion of this testimony, counsel for appellant renewed his objection and moved that it be stricken from the record on the ground that it was inadmissible hearsay testimony and that "the time lapse precluded" its admissibility as a part of the *res gestae*.

It is, of course, well settled that out-of-court declarations or utterances made by the victim of a crime may be related testimonially by a witness to whom they were addressed or overheard, notwithstanding the rule prohibiting hearsay testimony, if the statements come within the scope of the so-called *res gestae* rule. Although it has been said that "the term *'res gestae'* is not susceptible of any definition to satisfy the protean adjudications which ground their conclusions under its name", Annot., 83 A.L.R.2d 1368, 1371, the term "may broadly be defined as matter incidental to the main fact and explanatory thereof and may include acts and words which are so closely connected therewith as to constitute a part of the transaction; and such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby." Annot., 19 A.L.R.2d 579, 582. Spontaniety is an essential ingredient since the basis for the admission of declarations under the *res gestae* rule is the belief that spontaneous and instinctive utterances, made without opportunity or time for reflection or deliberation, are more likely to produce a true and accurate picture of the transaction or event of which they form a part. See *Hall v. State*, 5 Md. App. 599, 604-605.

This Court, in *Reckard v. State*, 2 Md. App. 312, 316, framed the rule in these terms:

"* * * [W]hether a declaration is a part of the *res gestae* depends upon whether the declaration represented the facts talking through the party or whether the party was talking about the facts, since *res gestae* comprehends a situa-

tion which presents an occurrence sufficient to produce a spontaneous and instinctive reaction under such circumstances as to show a lack of forethought or deliberate design on the part of the declarant.

"To constitute *res gestae* an utterance need not in all strictness be contemporaneous, in the sense of simultaneous, with the principal act; it may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and be dissipated by meditation.

"The point is not so much the lapse of time or change of place as the continuance of a situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived action of the speaker's will."

While there is apparent agreement among the courts and authorities regarding a general statement of the rule, it is evident that the ingredients of the rule contain such variables as to prevent its application to a given set of facts and circumstances with precise or "litmus test" accuracy. It is for this reason that trial judges have been given a rather wide latitude of discretion in determining the admissibility of evidence under the *res gestae* rule. *Hicks v. State*, 3 Md. App. 231. On the other hand, because age-long experience has taught that hearsay testimony is inherently untrustworthy, the admission of such testimony under the *res gestae* rule must be scrutinized with care and unless the acts and circumstances are such as to bring the declaration, utterances or acts within the scope of the rule, such evidence must be excluded.

It is evident in the case at bar that the trial judge considered the rule for he stated, in reaching his finding of guilt, that the declaration made by the victim to his mother on January 14, 1969, "was, in the view of the court, a spontaneous utterance occurring at a time when the defendant was pressing for a renewal of his associa-

tion with this young boy and was \* \* \* in the judgment of the court admissible evidence as an exception to the hearsay rule."

While the statement given to the mother may have been spontaneous in the sense that it constituted a generated or sparked reason for his unwillingness to visit the appellant on that occasion, it is evident that the statement cannot be characterized as being an integral part of the transaction or event which is alleged to have occurred on January 3, 1969. It cannot be said that this was a declaration or utterance so contemporaneous in time and place as to have been made under the "immediate spur" of the event or a continuing part of the transaction which had occurred eleven days before. Rather, it was "a narrative of a completed event", given under circumstances and conditions where there had been ample time and opportunity to reflect upon and report the event. See *Patterson v. B. & O. Railroad*, 133 Md. 276. In brief, the declaration did not "represent the facts talking through the party" but, rather, "the party was talking about the facts." This distinction, in our opinion, is clear and crucial and requires us to set aside the judgment of conviction.

We are not unmindful that we are confronted with a child of tender years and that the application of the rule should not be applied with the same rigidity that its application would be given to declarations of adults. See *Smith v. State*, 6 Md. App. 581, 587. At the same time, however, we cannot take a myopic view of the circumstances under which the statement was given and thereby warp the impartial administration of the time-tested rule of evidence which proscribes the admission of hearsay testimony.

Nor have we overlooked the Michigan cases, urged upon us by the State, holding admissible under the *res gestae* rule statements by children of tender age made three months after the incident, *People v. Gage*, 28 N. W. 835; thirteen days after the incident, *People v. Glover*, 38 N. W. 874; and three days after the incident, *People v. Bon-*

*neau*, 35 N.W.2d 161. As indicated in the Annot., *supra*, 83 A.L.R.2d 1376, "Michigan has, by a peculiar combination of legal theories, extended the *res gestae* exception much further than has any other state." We are not prepared to so extend the rule.

From the record, it is apparent that the trial judge in reaching his verdict placed substantial reliance upon the mother's hearsay testimony. Thus, it cannot be said that its admission was harmless.

In view of our conclusion, we do not reach the other contentions raised by the appellant in this appeal.

*Judgment reversed and case remanded for a new trial.*