UNITED STATES of America, Appellee,

v.

Milton Edward BAILEY, Appellant.

No. 77–2188.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
Rule 12(6) Feb. 16, 1978.

Decided July 11, 1978.

---

Blair A. Griffith, U. S. Atty., John P. Garhart, Edward J. Schwabenland, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Michael A. Della Vecchia, Evashavik, Capone, Evans & Della Vecchia, Pittsburgh, Pa., for appellant.

Before GIBBONS and HUNTER, Circuit Judges, and STAPLETON,* District Judge.

## OPINION

JAMES HUNTER, III, Circuit Judge:

In this case appellant Milton Bailey challenges his conviction for armed bank robbery. Although Bailey has raised several grounds on appeal, we find merit only in his contention that the introduction of certain evidence was error.[1] We reverse and remand for a new trial.

### I.

On February 6, 1975, two men robbed a branch office of the Colony Federal Savings and Loan Association in Aliquippa, Pa. Five persons in the bank at the time of the robbery were ordered to lie down on the floor as the robbers rifled the tellers' cash drawers. The robbers fled the Bank and made their escape by car.

Before the two had entered the bank, a young boy noticed them and became suspicious. The boy made mental notes of the car's description and out-of-state license plate number. Hiding behind nearby church-steps, the boy waited until after he saw the two leave the bank quickly and run toward the car. He ducked out of sight until the car left, and when policemen arrived, the boy came forward with his information.

Inspecting the area where the boy said the car had been waiting, a police officer found a number of twenty dollar bills strewn along the curb. The car described by the boy was registered to Mrs. Regina Dorsey. When questioned by the FBI, Mrs. Dorsey stated that on the day in question her daughter's boyfriend, Milton Bailey, had been left in possession of the car. During the investigation, several witnesses to the robbery were shown photographic displays. Two picked Bailey out of one of the displays as appearing to have been one of the robbers. At Bailey's trial, however, no witness was able to identify Bailey positively as one of the robbers.

Palm prints removed from a teller's counter at the bank were identified as having been made by Johnny Bernard Stewart. Stewart was arrested, and after plea negotiations agreed to plead guilty. The terms of the agreement required Stewart to furnish a statement regarding the robbery, and to testify at any future proceedings concerning the robbery. In return, the government agreed to move for dismissal of one count of the two-count indictment brought against Stewart.

Prior to his sentencing, Stewart gave two oral statements to the FBI. The latter, made on April 29, 1976, was transcribed by an FBI agent. Stewart signed that statement, acknowledging that it was true. Both statements outlined Stewart's own involvement in the Colony Federal robbery and named Milton Bailey as the second

---

* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation.

1. After examining the record, we have reviewed the following contentions raised by appellant and find them to be without merit:

    1. "The court erred in not granting defense motions to dismiss nor granting a motion to strike the testimony of all witnesses who testified that they had made notes and supplied same to the F.B.I., but said notes were not produced at trial after demand by the defense;"

    2. "The trial court erred in not dismissing the indictment for lack of a speedy trial;"

    3. "The court erred in not granting the defense pretrial motion to suppress evidence stemming from the pretrial photographic dis-

play or its in-trial motion to strike all testimony regarding said photographic display because of the missing display shown to various witnesses;" and

    4. "The defendant was improperly removed from Lorton, Virginia, to the Western District of Pennsylvania."

Appellant also contends that "the verdict was against the law and against the weight of the evidence." To the extent that this argument questions the sufficiency of the evidence presented by the government at trial, it is without merit. To the extent that appellant would have us evaluate the sufficiency of only the evidence properly admitted against him, we decline to do so. Rather, the government should be allowed to present its case in a new trial.

bank robber. Stewart had counsel present at the time he made his agreement with the government and when both statements were made. One count of the indictment was dismissed pursuant to Stewart's agreement with the government, and he was sentenced several months prior to Bailey's trial.

Bailey was indicted on June 9, 1976. During his trial, the government learned that Stewart would refuse to testify concerning his earlier statements. Out of the presence of the jury, Stewart was brought before the trial judge, and the following colloquy occurred.

The Court: No, he doesn't have to be sworn.

Mr. Stewart, stand up here.

I understand from the United States Attorney that if you are called as a witness in the case of the United States v. Mr. Bailey, that you will refuse to testify. Is that correct?

Mr. Stewart: Right.

The Court: On what basis?

Mr. Stewart: Because I don't see where it will help me or hurt me.

The Court: It will hurt you if you don't testify, because I order you to testify.

Mr. Stewart: Well, I refuse.

The Court: Fine. I instruct the United States Attorney to prepare a criminal charge for contempt of this Court because I have ordered the man to testify and he says he won't.

So just prepare a criminal citation for contempt of court.

Now you can see how it is going to hurt you.

Mr. Garhart: Will the Court explain to him what the penalties are?

The Court: Well, yes.

I can sentence you to an additional jail term, and I will, and that will have a serious effect on your possibilities of parole.

You have no right to tell the Court that you won't testify. I can't make you testify, but I can sure put you some place where you will have an opportunity to think it over, and I will.

Mr. Garhart: It is further my understanding that such a term would be consecutive—

The Court: It would be consecutive to the term he is now serving.

After Stewart left the courtroom, the government asked the court to rule on the admissibility of Stewart's written statement pursuant to Rules 804(b)(3) and 804(b)(5) [2] of the Federal Rules of Evidence. Defendant's counsel objected, arguing that the rules did not permit admission of the statement and that its admission would violate the Confrontation Clause of the Sixth Amendment.[3] The court made no ruling on

**2.** Rules 804(b)(3) & (5) state:

(b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(5) Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

**3.** U.S.Const. amend. VI states in part:

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .

the government's offer at that time but continued the proceedings temporarily so that counsel for both sides could research the questions raised and argue the matter the next morning.

After argument, the court ruled that the evidence was admissible under Rule 804(b)(5), but informed defense counsel that it would allow a three day continuance and any other time necessary. The court also informed counsel that it was willing to provide Stewart to the defense for cross-examination, or to notify the jury that Stewart was unwilling to testify. Bailey's counsel continued his objection to the introduction of the evidence. He declined the opportunity to bring Stewart to the stand for cross-examination after the confession was admitted, contending that if Stewart did answer questions at that time, Bailey's counsel might be placed in the position of proving the government's case against his client.

After the recess allowed by the trial judge, Bailey's lawyer informed the court that Stewart continued to refuse to testify and would not take the stand for defense cross-examination. The trial resumed and an FBI agent who was present when the statement was made by Stewart testified on the manner of taking the statement, as well as to the statement's contents. On cross-examination, Bailey's lawyer not only was allowed to question the agent about the circumstances surrounding the making of the statement, but also was permitted to impeach Stewart, through the agent, by eliciting prior convictions.

The jury found Bailey guilty, notwithstanding his alibi defense that he was working in his father's restaurant on the day of the robbery. Bailey then moved for a new trial, alleging, *inter alia*, that the introduction of the Stewart confession violated his right to confront witnesses against him and also did not meet the requirements of Rule 804(b)(5). The trial judge rejected these

contentions, and Bailey has appealed to this court.

## II.

Bailey challenges the introduction of the Stewart confession on both evidentiary and constitutional grounds. Mindful of our responsibility to avoid, if possible, decisions on constitutional questions, we shall first determine whether Stewart's written confession was properly admitted under the Federal Rules of Evidence. If we were to find that the trial judge properly allowed the jury to consider the confession under the Rules, we nevertheless would have to evaluate the evidence under the Sixth Amendment because, although the hearsay rules and the Confrontation Clause "stem from the same root," *Dutton v. Evans*, 400 U.S. 74, 86, 91 L.Ed. 210, 27 L.Ed.2d 213 (1970), the two are not to be considered equivalents. *Id.*

## A.

There is no doubt that Stewart's confession was a "written assertion", and thus a "statement" by Stewart, which the government offered at trial to prove the truth of the matters asserted in it. Thus it was hearsay under F.R.Evid. 801(c), and as such was inadmissible unless other rules permitted the statement to be admitted. F.R. Evid. 802.

■ At trial, the government argued that the confession of Stewart was admissible as a declaration against penal interest, pursuant to Fed.R.Evid. 804(b)(3). The court determined that the requirements of that section had not been met, since the statement had been made by Stewart while he was in custody and after he had been offered a bargain involving dismissal of one count of the indictment against him. The government has not pressed its argument on this point here, and we do not disagree with the trial court.[4]

---

4. Our examination of the record supports the trial judge's decision not to admit the confession as a declaration against interest. The testimony of the FBI agent at trial shows that Stewart was aware of the possibility of lenient

treatment if he would confess his role in the robbery and implicate his accomplice. In discussing Rule 804(b)(3) and its application to situations similar to that involved in this case, the Advisory Committee stated:

## B.

The trial court grounded the admissibility of the Stewart confession on rule 804(b)(5) of the Federal Rules of Evidence. That rule is one of two "residual" exceptions to the hearsay rule,[5] providing for the admission of evidence even when the traditional requirements for the admission of hearsay are not met.

Prior to the adoption of the Federal Rules of Evidence, the out-of-court confession involved in this case could not have been used against Bailey.[6] Thus we must determine the extent to which the addition of the residual rule of 804(b)(5) has broadened the trial court's discretion in admitting evidence.

The trial court is vested with discretion in its determination whether hearsay evidence offered by a party meets the requirements of an exception set forth in the Federal Rules of Evidence. Our role, therefore, is to decide whether the trial court abused its discretion in determining that Stewart's confession met all requirements of Rule 804(b)(5).

To be admissible under Rule 804(b)(5), an out of court statement must meet the following requirements:

The declarant must be unavailable;

The statement must have circumstantial guarantees of trustworthiness equivalent to the first four exceptions in Rule 804(b);

The statement must be offered as evidence of a material fact;

The statement must be more probative on the point for which it is offered than any other evidence that the proponent reasonably can procure;

Introduction of the statement must serve the interests of justice and the purposes of the Federal Rules;

The proponent of the evidence to be offered must have given his adversary the notice required by the rule.

The history of Rule 804(b)(5) and its counterpart, Rule 803(24), indicates a congressional intention that the rules have a narrow focus. The initial "residual" rule for the introduction of hearsay not covered by one of the specific exceptions to the hearsay rule was phrased by the Advisory Committee as follows:

A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

56 F.R.D. 183, 322 (1972).

After the rules were submitted to Congress, the House Judiciary Committee removed from both Rules 803 and 804 the residual exceptions on the grounds that the

---

Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same words, spoken under different circumstances, e. g., to an acquaintance, would have no difficulty in qualifying. The rule does not purport to deal with questions of the right of confrontation.

This exception to the hearsay rule rests upon the assumption that one does not make statements that would damage himself unless the statement is true. *See* 5 Wigmore on Evidence § 1455 (Chadbourn Rev.1974).

Since the offer of less stringent punishment was communicated to Stewart, it is reasonable to infer that Stewart's statement implicating himself and Bailey was motivated towards helping himself, and thus lacked the indicia of reliability that the rule is founded upon.

**5.** F.R.Evid. 803(24) is the counterpart of Rule 804(b)(5) in all respects except that the unavailability of the declarant need not be demonstrated as a prerequisite for admission of the evidence. During congressional consideration of the Federal Rules, the two "residual" hearsay exceptions were discussed together, as they raise the same policy questions.

**6.** In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held inadmissible on confrontation grounds a confession made by defendant's accomplice implicating defendant in a joint trial when the accomplice had refused on fifth amendment grounds to be called as a witness. In upholding the confrontation claim, the Court noted that "We emphasize that the hearsay statement inculpating the petitioner was clearly inadmissible against him under traditional rules of evidence . . . ." 391 U.S. at 128 n. 3, 88 S.Ct. at 1623.

rules added too much uncertainty to the law of evidence.[7] The Senate Judiciary Committee reinstated the deleted Advisory Committee residual exceptions in a modified form. S.Rep.No.1277, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7051, 7056. The Senate Committee noted its fear that without residual rules of admissibility for hearsay in certain instances, the established exceptions would be tortured in order to allow reliable evidence to be introduced. Further, the new proposed residual rules were drafted to apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.[8] The Senate Committee further stated that the residual exceptions were to be used only rarely, and in exceptional circumstances. The Senate Report cautioned that "[t]he residual exceptions are not meant to authorize major judicial revisions of the hearsay rules, including its present exceptions."

7. The committee noted that some leeway was provided for the courts by Rule 102, which could cover the anomalous situation calling for admission of ·hearsay not covered by an enumerated exception. Rule 102 states:

   These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

   The House Committee also stated that "if additional hearsay exceptions are to be created, they should be by amendments to the Rules, not on a case-by-case basis." H.R.Rep.No.650, 93d Cong. 2d Sess. (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7051, 7079.

8. The Committee cited as an appropriate example the case of *Dallas County v. Commercial Union Assoc. Co., Ltd.*, 286 F.2d 388 (5th Cir. 1961). In that case, the court allowed into evidence a copy of a newspaper article describing a fire in a county courthouse fifty years prior to the collapse of the courthouse tower. The insurer offered this evidence in order to show that certain charred wood found in the ruins might not have been the product of lightning striking the courthouse and causing its collapse, as the county contended. The article, however, would have supported the insurer's proposition that the tower collapsed because of deterioration and disrepair. In allowing the evidence to be admitted, the court considered

The House-Senate Conference Committee agreed to include the Senate residual rule with further modifications. H.Conf.Rep. No.1597, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 7051, 7106. Representative Dennis, one of the floor managers of the Federal Rules of Evidence bill, stated in the House debate preceding passage of the bill, that the residual rules applied to situations "comparable to the ordinary hearsay exceptions." 120 Cong.Rec. 40894 (1974). In his view, the residual rule did not purport to accomplish much at all regarding expansion of traditional rules of evidence.[9] Thus, in reviewing the admissibility of evidence under Rule 804(b)(5), we must keep in mind its limited scope as intended by Congress.

■ Defendant does not contest the trial judge's finding that Stewart was unavailable,[10] or that the confession was evidence of a material fact—Bailey's identification as one of the bank robbers. Bailey contends, however, that other elements of Rule 804(b)(5) were not satisfied.[11] Initially, he

the inconceivability of the unknown reporter fifty years previously writing about a fire if one had not in fact occurred. *See* S.Rep.No.1277, 93d Cong. 2d Sess. (1974) *reprinted in* [1974] U.S.Code Cong. & Admin.News at 7065–66.

9. Representative Dennis, because of his role in Congressional consideration of the rules, would seem to be an "authoritative person" whose statements are entitled to some weight in evaluating the legislative intent in modifying the residual rules of hearsay. *See Ideal Farms, Inc. v. Benson*, 288 F.2d 608 (3d Cir. 1961) *cert. denied* 372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d 128 (1963).

10. Rule 804(a) defines "unavailability" in part as including situations in which the declarant "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." F.R.Evid. 804(a)(2). *See United States v. Gonzalez*, 559 F.2d 1271 (5th Cir. 1977); *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976); *cert. denied* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

11. One of Bailey's contentions is that Stewart's statement was not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," F.R.Evid. 804(b)(5)(B). We disagree. Although the government made an effort to place Bailey in the bank during the robbery through the identi-

argues that the statement cannot be used against him since it was not until after trial had commenced that the government informed him that it would seek to have Stewart's statement introduced.

Before an out-of-court statement can be admitted pursuant to Rule 804(b)(5), the proponent of it must advise the adverse party his intention to use the statement, as well as the "particulars of it, including the name and address of the declarant." The proponent must give notice "sufficiently before trial . . . to provide the adverse party with a fair opportunity to meet [the statement] . . . ." The advance notice provision came into being during the House-Senate Conference on the proposed rules. H.Conf.Rep.No.1597, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 7051, 7106.

The debates in Congress and the statements of Rep. William Hungate (Chairman of the House Judiciary Committee Subcommittee on Criminal Justice) indicate some understanding that the requirement of advance notice was to be strictly followed. See 120 Cong.Rec. 40893 (1974). A number of courts of appeals have held that the purpose of the advance notice provision of the rule is satisfied even though notice is given after the trial begins, as long as there is sufficient opportunity provided for the adverse party to prepare for and contest the admission of the evidence offered pursuant to the rule. *United States v. Carlson, supra*; *United States v. Medico*, 557 F.2d 309 (2d Cir. 1977); *See* Weinstein's Evidence ¶ 803(24)[01] at 803–243. *But see United States v. Oates*, 560 F.2d 45, 72–73 n. 30 (2d Cir. 1977) (dictum) (finds legislative history to require an "undeviating adherence to the requirement that notice be given in advance of trial").

■ We believe that the purpose of the rules and the requirement of fairness to an adversary contained in the advance notice requirement of Rule 803(24) and Rule

804(b)(5) are satisfied when, as here, the proponent of the evidence is without fault in failing to notify his adversary prior to trial and the trial judge has offered sufficient time, by means of granting a continuance, for the party against whom the evidence is to be offered to prepare to meet and contest its admission. Since the government was unable to notify Bailey's counsel prior to trial of Stewart's refusal to testify, and since the trial judge offered counsel time to conduct interviews as well as to research the evidentiary question, we feel that Bailey was not prejudiced by the lack of notice before trial. By examining the adequacy of the notice and the time allowed to prepare to meet a statement offered pursuant to these rules, a reviewing court may determine whether the adverse party has had "a fair opportunity to prepare to contest the use of the statement." H.Conf.Rep.No.1597, 93d Cong., 2d Sess. (1974) *reprinted in* [1974] U.S.Code Cong. & Admin.News at 7106.

■ Bailey also argues that Stewart's confession failed to meet the requirement that the evidence to be admitted pursuant to Rule 804(b)(5) must possess "guarantees of trustworthiness" equivalent to the other enumerated exceptions under Rule 804(b). We find this contention convincing.

The specific hearsay exceptions of Rule 804(b) include those for former testimony, dying declarations, statements against interest, and statements of family background or history. Each of these kinds of statements is admissible, though hearsay, because the circumstances in which the statements are made are indicative of a strong propensity for truthfulness (dying declarations), because there has been a previous opportunity for cross-examination (former testimony), or because the contents of the statements themselves are of such a nature that one reasonably would conclude that the speaker was telling the truth

---

fication testimony of prosecution witnesses, none were able to state positively that they recognized Bailey at trial as the second bank

robber. We feel that the trial judge did not abuse his discretion in resolving this issue.

(statements against interest, statements of family history).[12]

The trial judge determined the reliability of the hearsay statement on the evidence that the bank robbers fled the crime in Bailey's girlfriend's car. Since the statement mentioned that Stewart and Bailey traveled to Aliquippa in the car, the trial judge held that Stewart's statement possessed sufficient indicia of reliability to justify its admission pursuant to 804(b)(5). We believe that the recitation of this single factor does not satisfy the requirement that the statement to be offered in evidence have "circumstantial guarantees of trustworthiness" equivalent to the other 804(b) exceptions. Indeed, if Stewart had borrowed the car from Bailey and had committed the robbery with another, the bargain he struck with the authorities provided him with the opportunity to sidetrack the investigation and protect his accomplice by naming Bailey, a plausible suspect, as his partner in the robbery.

We do not feel that the trustworthiness of a statement offered pursuant to the rule should be analyzed solely on the basis of the facts corroborating the authenticity of the statement. Since the rule is designed to come into play when there is a need for the evidence in order to ascertain the truth in a case, it would make little sense for a judge, in determining whether the hearsay is admissible, to examine only facts corroborating the substance of the declaration. Such an analysis in effect might increase the likelihood of admissibility when corroborating circumstances indicate a reduced need for the introduction of the hearsay statement. We do not believe that Congress intended that "trustworthiness" be analyzed in this manner. Rather, the trustworthiness of a statement should

be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely. Further, consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness.

In *United States v. Medico*, 557 F.2d 309 (2d Cir. 1977), the court held that circumstantial degrees of trustworthiness justified the admission of an unknown bystander's report of the license plate of a fleeing automobile used by escaping bankrobbers. The bystander shouted the numbers out from the street to another bystander, who was stationed next to the locked door of the bank. The bystander near the door relayed the information into the bank to an employee who transcribed the description and tag number of the car. In assessing the reliability of the hearsay, the court looked to the opportunity of the declarants to observe, the amount of time for the information to be relayed to the bank employee, and the potential for misidentification or fabrication, determining that the situation in which the statements were offered provided a guarantee of trustworthiness on a par with the enumerated 804(b) exceptions.

In *United States v. Gomez*, 559 F.2d 1271 (5th Cir. 1977), the court held that the grand jury testimony of a witness who had refused to take the stand at trial was not admissible, because the circumstances in which he gave his grand jury testimony did not measure up to the trustworthiness requirement of Rule 804(b)(5). In that case, the witness had been convicted and had been granted immunity in order to compel him to testify before the grand jury. Since the government had made the witness aware that he could be subjected to an unlimited number of contempt proceedings

---

12. As originally submitted to Congress, the proposed Federal Rules contained an additional exception for statements of recent perception. The House Committee, however, deleted this rule on the grounds that statements of the type encompassed within this exception did not bear "sufficient guarantees of trustworthiness to justify admissibility." H.R.Rep.No.650, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News at 7079–80. We think that an awareness of Congress' deletion of proposed Rule 804(b)(2) provides some guidance in determining whether a statement offered under Rule 804(b)(5) possesses guarantees of trustworthiness equivalent to those 804(b) exceptions included in the final version of the federal rules.

# 350

if he failed to testify, and since the witness was in fear of retaliation against himself and his family if he did testify, the court found that his responses to leading questions before the grand jury failed to pass the trustworthiness test of Rule 804(b)(5).[13]

In this case, the circumstances under which Stewart provided his statement implicating Bailey do not inspire confidence in its reliability. First, as we have discussed, the statement was made during negotiations for reduction of charges lodged against Stewart. Secondly, the statements were made in a face-to-face meeting with two FBI agents. Further, the statement was not made under oath and its veracity had not been tested, certainly not by cross-examination. Finally, the fact relied upon by the trial judge as corroborating Stewart's confession, the identification of the car, does not provide a sufficient degree of reliability to justify the statement's introduction. Thus we feel that the trial judge's determination as to the trustworthiness of the statement was an abuse of his discretion, since the assertions in the statement and the circumstances in which the statement was given do not provide guarantees of trustworthiness equivalent to the other

Rule 804(b) exceptions that serve as a benchmark for Rule 804(b)(5).

■ We also have grave doubts about the propriety of introducing Stewart's confession in light of clause (C) of 804(b)(5), which requires that "the general purposes of [the Federal Rules of Evidence] and the interests of justice will best be served by [the] admission of the statement into evidence." Although we do not reach the constitutional issue raised in this case, we are concerned with the relationship between the Confrontation Clause of the Sixth Amendment and the admissibility of this evidence under the Federal Rules of Evidence. In drafting the proposed rules submitted to Congress, the Advisory Committee provided leeway in order to insure that the rules did not collide with the Confrontation Clause.[14] Thus, in analyzing the admissibility of evidence pursuant to Rule 804(b)(5), a court should exercise its discretion in order to avoid potential conflicts between confrontation rights and this hearsay exception.

The use of Stewart's confession at Bailey's trial raises difficult constitutional issues, and we have doubts whether, in light of the lack of cross-examination,[15] the ques-

13. In *United States v. Carlson, supra*, the Eighth Circuit held admissible statements by a grand jury witness who refused to testify at trial. There the court focused on the fact that the declarant had been under oath at the time of making the statements, and that when informing the trial judge of his refusal to testify later, the declarant stated that he had told the truth to the grand jury. *See also United States v. West*, 574 F.2d 1131 (4th Cir. 1978) (trustworthiness found in deceased declarant's grand jury testimony because close supervision of his activities as undercover informant rendered deception of agents "substantially impossible").

14. In its introductory note to Article VIII of the proposed Federal Rules, the Advisory Committee discussed the relationship of the rules to developing law related to the right of confrontation as follows:

Under the earlier cases, the confrontation clause may have been little more than a constitutional embodiment of the hearsay rule,

even including traditional exceptions but with some room for expanding them along similar lines. But under the recent cases the impact of the clause clearly extends beyond the confines of the hearsay rule. These considerations have led the Advisory Committee to conclude that a hearsay rule can function usefully as an adjunct to the confrontation right in constitutional areas and independently in nonconstitutional areas. In recognition of the separateness of the confrontation clause and the hearsay rule, and to avoid inviting collisions between them or between the hearsay rule and other exclusionary principles, the exceptions set forth in Rules 803 and 804 are stated in terms of exemption from the general exclusionary mandate of the hearsay rule, rather than in positive terms of admissibility. See Uniform Rule 63(1) to (31) and California Evidence Code §§ 1200–1340. 56 F.R.D. 183, 292 (1972).

15. *See Dutton v. Evans*, 400 U.S. 74, 87, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Brookhart v.*

tionable reliability of the statement on the record before us,[16] and the devastating impact of the statement,[17] admission of this statement could pass constitutional muster. Thus, in evaluating the purpose of the rules under 804(b)(5)(C), the better course would have been for the trial judge to have exercised his discretion under the rules not to admit the evidence.[18]

Although we have mentioned the values protected by the Confrontation Clause, we expressly do not base our decision to reverse Bailey's conviction on constitutional grounds. At present, the state of this aspect of the Sixth Amendment is unsettled, and its future path has been a matter of some commentary.[19] Our decision is based on the failure of Stewart's statement implicating Bailey to satisfy the requirements of Rule 804(b)(5).

The judgment of the district court will be reversed and remanded for a new trial.

---

*Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460 (3d Cir. 1977); *United States ex rel. Oliver v. Rundle*, 417 F.2d 305 (3d Cir. 1969), *cert. denied* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970).

16. *See Green v. California*, 399 U.S. 149, 161, 92 S.Ct. 20, 30 L.Ed.2d 34 (1970).

17. *See Dutton v. Evans, supra*, at 87, 91 S.Ct. 210.

18. *See* note 14 *supra.*

19. *See, e. g.*, Western, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567 (1978); Younger, *Confrontation and Hearsay: A Look Backward, A Peek Forward*, 1 Hofstra L.Rev. 32 (1973); Note, *Confrontation and the Hearsay Rule*, 75 Yale L.J. 1434 (1966).