W.C.L., Jr., Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent,

And Concerning W.L. and M.L.,
Parents.

No. 82SC243.

Supreme Court of Colorado,
En Banc.

July 9, 1984.

David F. Vela, Colorado State Public Defender, Barbara S. Blackman, Deborah S. Waldbaum, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the decision of the Court of Appeals in *People ex rel. W.C.L., Jr.*, 650 P.2d 1302 (Colo.App. 1982). The Court of Appeals affirmed the decree of delinquency entered by the Weld County District Court against W.C.L., Jr. (W.C.L.), after a jury found W.C.L. guilty of acts which if committed by an adult would constitute sexual assault on a child under section 18–3–405, 8 C.R.S. (1978). Over W.C.L.'s objections, the district court admitted into evidence out-of-court statements by the four-year-old victim under CRE 803(2) and (4): the excited utterance and medical diagnosis exceptions to the hearsay rule. The Court of Appeals ruled that the codified hearsay exceptions were not applicable, but admitted the statements because the evidence was sufficiently trustworthy and necessary under common law rules. We reverse the judgment of the Court of Appeals.

In February 1980, W.C.L., age 16, began living with his sister and brother-in-law, the parents of the victim. During the ensuing months, W.C.L. occasionally babysat for the victim, a girl then age three, and her younger brother. On June 5, 1980, the victim went to stay at the home of an aunt while her family moved. Two days later, on June 7, the victim spent the day with another aunt and the aunt's young children.

When the aunt was preparing the children for baths at bed-time, and while all the children were undressed, the victim faced the aunt's six-year-old son, spread her legs, and said, "Get me." The aunt spoke the victim's name and asked what she was doing in a tone that apparently startled the child. Five to ten minutes later when the victim was in the bathtub, the aunt asked where she had learned that, and the child replied, "Uncle [W.C.L.] tickles me." The aunt asked her where W.C.L. tickled her, and the victim pointed to her genitals. The aunt reported the incident to the Department of Social Services.

On June 12, 1980, the victim was referred by the Department of Social Services for evaluation by David Kerns, a pediatrician on the child protection team at the University of Colorado hospital, who was qualified at trial as an expert in the diagnosis and treatment of child abuse, including sexual abuse of children. His physical examination revealed that the victim had sustained repeated penetration of the vagina. The doctor also observed multiple small puncture marks on the child's feet and buttocks. The victim's responses to his questions indicated that the physical injuries were the result of parental abuse and that the sexual contact was with W.C.L.

After the doctor testified at trial that the child told him she had had sexual contact with W.C.L., he read the following conversation as recorded in his notes:

I asked: "What does Uncle W. [W.C.L.] do to you?" and [the victim] said: "He touches me here," and pointed to her genitals. I asked: "With his fingers?" and [the victim] said: "No." And I asked: "With what?" and [the victim] said: "With his cock."

I asked: "Does he hurt you with it?" She said: "Yes."

The doctor described the victim's demeanor while responding to his questions as matter-of-fact.

The doctor then observed:

I think the experience of everybody working in this field and writing about it is that if a young child tells you that they have had sexual activity with somebody, then you had best believe it; that young children do not lie or fabricate when they give you really graphic portrayals of sex-

ual activity. That means they have experienced it.

So I think the state of understanding in the field is that if we get graphic allegations of sexual activity from young children, we should presume they are true.

Just before trial began, the district court determined that the victim was incompetent to testify.[1] However, the district court admitted the victim's statement to the aunt under the excited utterance exception to the hearsay rule, codified in CRE 803(2). The district court found that the statement was spontaneous, was made when the child was excited, was volunteered by the child in response to a question that did not suggest the answer, and indicated the absence of any intellectual contrivance. The court determined that the fact the statement was not made immediately after the assault was not critical. The court admitted the victim's statement to the doctor under the medical diagnosis exception to the hearsay rule, codified at CRE 803(4), on the basis that the medical diagnosis in this case necessarily included the source of the injuries as well as their nature.

W.C.L. conceded that the child had been sexually assaulted but denied that he committed the assault. Therefore, the victim's identification of W.C.L. to the aunt and the doctor was crucial because it was the only testimony identifying a perpetrator of the offense. The Court of Appeals recognized the necessity of the hearsay evidence, and although it ruled that the victim's statements did not fall within the excited utterance or medical diagnosis exceptions to the hearsay rule, it upheld their admission.[2]

The Court of Appeals noted that Fed.R. Evid. 803(24), allowing admission into evidence of any hearsay statement not specifically covered by the stated exceptions if the hearsay statement was found to have "equivalent circumstantial guarantees of trustworthiness," was omitted intentionally from the Colorado Rules of Evidence. However, the Court of Appeals was persuaded that "when, by corroborating evidence, a foundation is laid which clearly establishes an incentive to tell the truth, and no incentive to falsify, and where the necessity is also established, the statements may properly be admitted as a qualified exception to the hearsay rule." *People ex rel. W.C.L.*, 650 P.2d at 1304 (citing *United States v. Bailey*, 581 F.2d 341 (3rd Cir.1978); *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977)).

We agree with the Court of Appeals that the victim's statements do not fall within the exceptions to the hearsay rule codified in the Colorado Rules of Evidence. We also agree with the Court of Appeals that the statements at issue have circumstantial guarantees of trustworthiness equivalent to those supporting the codified exceptions to the hearsay rule. However, this court did not include a residual hearsay exception similar to that in Fed.R.Evid. 803(24) when it adopted the rules of evidence. Therefore, we reverse the judgment of the Court of Appeals.

## I.

■ The issue in this appeal is whether the testimony of two witnesses relating statements of the victim, who was not competent to testify, is admissible hearsay under the Colorado Rules of Evidence.[3] The

---

1. The victim did not know what "to tell the truth" meant. The district attorney conceded that the child was incompetent to testify.

2. The Court of Appeals incorrectly stated that the district court admitted the victim's statements to the aunt under CRE 803(1), the spontaneous present sense impression exception, instead of CRE 803(2), the excited utterance exception. This error does not alter the validity of the Court of Appeals' conclusion because the case the court relied upon, *Lancaster v. People,*

200 Colo. 448, 615 P.2d 720 (1980), discussed CRE 803(2), not CRE 803(1).

3. CRE 801(c) provides that hearsay is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the victim's statements were offered to prove the truth of the matter asserted, the identity of the person who abused the victim.

district court allowed the aunt to testify about the victim's statement to her, considering it an excited utterance. CRE 803(2) defines the excited utterance exception to the hearsay rule as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[4] The rationale supporting the excited utterance exception is that statements made under the stress of excitement are generally reliable because of a lack of time to fabricate. *People ex rel. O.E.P.*, 654 P.2d 312 (Colo.1982); 6 J. Wigmore, *Evidence* § 1747 at 195 (Chadbourn rev. 1976); C. McCormick, *Handbook of the Law of Evidence* § 297 at 704 (E. Cleary 2d ed. 1972). The exception recognizes that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." *O.E.P.*, 654 P.2d at 317 (quoting Fed.R.Evid. 803(2) advisory committee note).[5]

■ At least two requirements must be met before a statement qualifies as an excited utterance: "First, there must be some occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *People v. Dement*, 661 P.2d 675, 678–679 (Colo.1983) (quoting C. McCormick, *supra*, § 297 at 704). *See also People v. Franklin*, 683 P.2d 775 (1984). Generally, the sufficiency of the event or occurrence to qualify as the "startling event"— the first requirement—is not questioned. *See People v. Franklin*, 683 P.2d at 781;

C. McCormick, *supra*, § 297 at 705. Courts "look primarily to the effect of a particular event upon the declarant and, 'if satisfied that the event was such as to cause adequate excitement, the inquiry is ended.'" *O.E.P.*, 654 P.2d at 318 (quoting C. McCormick, *supra*, § 297 at 705).

■ Here, the dates of the assaults were never established, although the evidence supported an opportunity for W.C.L. to have committed the assault on several occasions between February, 1980 and June 5, 1980. The district court, however, determined that the startling event was the aunt's speaking the child's name and asking the child what she was doing while the child was making the suggestive gesture. Under this analysis, the first question is whether the aunt's reaction to the child's behavior creates an event for the child which is sufficiently startling, and the second is whether the child's statement five or ten minutes later was a spontaneous reaction. The Court of Appeals limited its consideration of the startling event to the assault and held that because it is impossible to determine the intervening time between any of the assaults and the child's statement to the aunt, the statement was inadmissible as a matter of law. In *O.E.P.*, although we acknowledged that the startling event need not be the assault itself,[6] we nonetheless analyzed under the excited utterance exception the lapse of slightly less than one day between the act of abuse, which we described as "a bizarre sexual experience implicating the child's mother," and the child's statement, without assigning any significance as a startling event to the questioning by the child's guardian

---

4. The codified exception is similar to the common law *res gestae* exception which applied to "statements relating to a startling act or event made spontaneously and without reflection while the declarant was under the stress of excitement." *Lancaster*, 200 Colo. at 451, 615 P.2d at 721.

5. Fed.R.Evid. 803(2) is identical to CRE 803(2). The advisory committee note to Fed.R.Evid. 803(2) describes the standard of measurement of the time element as the duration of the state

of excitement. The Advisory Committee, quoting Slough, Spontaneous Statements and State of Mind, 46 Iowa L.Rev. 224, 243 (1961), adds that "the character of the transaction or event will largely determine the significance of the time factor."

6. As we have observed, some courts also require that the substance of the assertion relate to the startling event. *People v. Dement*, 661 P.2d at 679, n. 2.

which precipitated the statement. *O.E.P.*, 654 P.2d at 318.

Our cases have allowed as excited utterances statements made by children too young to testify if the delay between the startling event and the declaration is adequately explained. In *O.E.P.*, the two-year-old victim's statement was made to her guardian at the first opportunity after the mother left. In *People v. Roark*, 643 P.2d 756 (Colo.1982), the five-year-old eyewitness told the mother of the victim the identity of the victim's assailant twelve hours after the assault and shortly after the discovery of the victim's body, when the child heard the mother tell a passer-by that some kids had murdered her daughter. In *Lancaster v. People*, 200 Colo. 448, 615 P.2d 720 (1980), the victim of a sexual assault, age two years and ten months, informed her mother of the assault as soon as she saw her about one-half hour after the assault occurred. *See also State v. Messamore*, 2 Hawaii App. 643, 639 P.2d 413 (1982); *Harnish v. State*, 9 Md.App. 546, 266 A.2d 364 (1970); *People v. Lovett*, 85 Mich.App. 534, 272 N.W.2d 126 (1978), *appeal denied*, 412 Mich. 904, 315 N.W.2d 407 (1982).

In addition to the lapse of time between the startling event and the out-of-court statement, other factors to be considered in determining whether the statement qualifies as an excited utterance under the requirement of spontaneity include whether it was made in response to an inquiry, *O.E.P.*, 654 P.2d at 318; *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979); whether it is accompanied by outward signs of excitement or emotional distress, *O.E.P.*, 654 P.2d at 318; and the choice of words employed by the victim to describe the experience, *O.E.P.*, 654 P.2d at 318; *Nick*, 604 F.2d at 1204.

In the case before us, if the only startling event were one of the assaults, we would agree with the Court of Appeals that the statement is inadmissible hearsay, and our inquiry would be ended. However, the district court found that the startling event was the aunt's response to the child's suggestive gesture.

Other courts have considered the effect of similar events insufficient to allow the admission of hearsay statements as excited utterances or *res gestae*. In *Keefe v. State*, 50 Ariz. 293, 72 P.2d 425 (1937), the mother testified that she discovered her four-year-old daughter and six-year-old son engaged in inappropriate sexual behavior. When the mother reproved the children, the little girl told her that the defendant did such things to her routinely. The latest possible time for sexual activity between the defendant and the child to have occurred was four days before the mother observed the children's inappropriate conduct. The Arizona Supreme Court determined that the child's statement was not an excited utterance; rather, it was an attempt to justify her behavior by relating the defendant's previous conduct as an excuse. *Keefe*, 72 P.2d at 428. *See State v. Messamore*, 2 Hawaii App. 643, 639 P.2d 413 (1982) (child's statement to parent detailing sexual assault ten days after the event was in response to fear of spanking for wetting her pants and thus was inadmissible); *Harnish v. State*, 9 Md.App. 546, 266 A.2d 364 (1970) (mother not allowed to testify as to five-year-old victim's statement about an event which occurred eleven days earlier between the child and the defendant when the statement was an explanation of the child's unwillingness to visit the defendant).

Even were we to conclude that the aunt's reaction to the child's suggestive gesture was a startling event sufficient to meet the first requirement of the excited utterance exception, we would also need to consider whether the child's statements were spontaneous under the second requirement. The child's statements to the aunt had none of the indicia of spontaneity; they were part of a calm narrative, made in response to questions, to a person who was not a

trusted authority figure.[7] Therefore, we conclude that the statements to the aunt were not excited utterances, admissible under CRE 803(2).

## II.

W.C.L. asserts that the district court erroneously admitted the victim's statements to Dr. Kerns under the medical diagnosis exception to the hearsay rule because the child was too young to understand the need to be truthful with a physician and the identification of W.C.L. was not "reasonably pertinent to diagnosis or treatment" as required by CRE 803(4).[8] Under CRE 803(4) the medical diagnosis exception includes: "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

■ Statements to physicians are presumptively reliable because of a patient's belief "that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician." C. McCormick, *supra*, § 292 at 690. Here, because the district court determined that the victim did not understand the meaning of "to tell the truth", the defendant argues that it is illogical to conclude that the same child, six months earlier, had the ability to understand the special role of a physician and the need to be truthful with him as required by the hearsay exception.

■ We agree that there may be some situations where a four-year-old child would not appreciate the need to tell a physician accurate information about her physical condition. *See generally* Note,

"Evidentiary Problems In Criminal Child Abuse Prosecutions," 63 Geo.L.J. 257 (1974). Particularly where, as here, the child is not experiencing physical pain and the Department of Social Services has referred the child to the doctor not for treatment but for confirmation of child abuse as a step in law enforcement proceedings, the situation may not fit within the rationale behind the medical diagnosis exception. However, the fact that a child could not appreciate the significance of providing accurate information to a physician does not mean that the child's statements are necessarily unreliable. Had we adopted a residual hearsay exception, such evidence might be sufficiently trustworthy to qualify as admissible hearsay. We turn now to a discussion of the residual hearsay exception.

## III.

The Court of Appeals held that the hearsay statements of the victim were admissible even though they did not fall within any of the codified exceptions to the hearsay rule. Specifically, the Court of Appeals ruled "that when, by corroborating evidence, a foundation is laid which clearly establishes an incentive to tell the truth, and no incentive to falsify, and where the necessity is also established, the statements may properly be admitted as a qualified exception to the hearsay rule." The court relied upon *United States v. Bailey,* 581 F.2d 341 (3d Cir.1978); *People v. Romero,* 42 Colo.App. 20, 593 P.2d 365 (1978); *People v. Stewart,* 39 Colo.App. 142, 568 P.2d 65 (1977); and *Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217 (1977). The federal case was decided under Fed.R.Evid. 803(24), and the Colorado cases were decided before the January 1, 1980

7. Prior to the date of the declaration at issue, the aunt had not seen the victim for three years.

8. The Court of Appeals held that there was no basis of reliability for the application of the medical diagnosis exception because nothing in the record established that the victim understood the purpose of the questioning by the doctor. The court did not address whether the

victim's identification of W.C.L. was reasonably pertinent to diagnosis or treatment. Because the evidence was insufficient to establish that the child could appreciate the significance of providing accurate information to the physician, we too do not reach the question of whether the identification of W.C.L. was reasonably pertinent to diagnosis or treatment.

effective date of the Colorado Rules of Evidence.

Fed.R.Evid. 803(24) makes admissible as hearsay:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

This rule was intentionally omitted from the Colorado Rules of Evidence.

The committee comment which accompanies the rules observes:

There is no Colorado rule because there are flimsy guidelines in the Federal rule, which allow too much discretion to the trial court in prescribing "circumstantial guarantees of trustworthiness." Vagueness and lack of standards in the use of such language is totally objectionable.

The committee's comment is similar to the view of the United States House of Representatives Judiciary Committee which deleted proposed Fed.R.Evid. 803(24) from the Federal Rules of Evidence because it injected too much uncertainty into the law of evidence and impaired the ability of practitioners to prepare for trial. However, the United States Senate Judiciary Committee disagreed with the House rejection of a residual hearsay exception such as that proposed in Rule 803(24), relying instead on the rationale of the advisory committee on the federal rules. The conference committee, composed of members of the House and Senate Judiciary Committees, adopted the Senate amendment which included Rule 803(24) in the Federal Rules of Evidence.

The advisory committee believed that, "without a separate residual provision, the specifically enumerated exceptions could become tortured beyond any reasonable circumstances which they were intended to include (even if broadly construed)." Fed. R.Evid. 803(24) advisory committee note. Moreover, the committee believed that the exceptions, while reflecting the most typical and well recognized hearsay exceptions, might not encompass every situation in which the reliability and appropriateness of a particular piece of hearsay evidence made clear that it should be heard and considered by the trier of fact. The committee intended that the residual hearsay exception in Rule 803(24) be used rarely, only in exceptional circumstances, and that a court should state on the record those special facts and circumstances it relies upon in determining the statement has a sufficiently high degree of trustworthiness and necessity to allow its admission. *Id.*

The facts in this case demonstrate the wisdom of including in our rules of evidence a residual hearsay exception such as that in Fed.R.Evid. 803(24). *See also People v. Franklin*, 683 P.2d 775 (Colo.1984); *O.E.P.*, 654 P.2d 312; *People v. Roark*, 643 P.2d 756 (Colo.1982). Otherwise, we face distorting or expanding our exceptions to the hearsay rule in a manner inconsistent with the text of the rules and the rationales justifying them, or excluding otherwise trustworthy hearsay evidence which may make it impossible to best serve the interests of justice. The doctor here had prior involvement, either as primary physician or as a consultant, in approximately 100 cases of sexual abuse of children. Based on his personal experience and his study of the literature on the subject, it was his medical opinion that testimony from young children about sexual activity is a reliable indication that the children have experienced such

activity. Also, the doctor testified that it was usual in cases involving pre-school children for the child to describe the sexual conduct in a matter-of-fact manner which indicates a lack of awareness of wrongdoing.

The uncontested physical evidence in this case established that the child had experienced repeated sexual contact. Extrinsic evidence established that W.C.L. had the opportunity to commit the crime. The child knew W.C.L. well and was not likely to mistake her assailant. The child's response when her aunt reacted to the child's suggestive gesture was made in a matter-of-fact manner which again indicated a lack of awareness of any wrongdoing. The district court concluded that the circumstances indicated the absence of any intellectual contrivance by the child. The statements were material and the only evidence probative of the identity of the assailant.

However, the question remains whether, in the context of this case, we can adopt an exception not included in our present rules and apply it to resolve the issue before us. CRE 802 provides, "Hearsay is not admissible except as provided by these rules or by the civil and criminal procedural rules applicable to the courts of Colorado or by any statutes of the State of Colorado." The adoption of a rule of evidence in the context of a case and its application to that case may be permissible. Colo. Const. art. VI, § 21; *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (retroactive changes in evidentiary rules are not *ex post facto* laws unless harsh or oppressive). Nevertheless, the Colorado Rules of Evidence were adopted after extensive study and full hearing. A substantial amendment of those rules such as the inclusion of a residual hearsay exception should be preceded by an opportunity for public comment and, if adopted, uniform application as of the effective date. Therefore, we decline to adopt the residual exception in the context of this case.

Judgment reversed.