**UNITED STATES**

v.

**Staff Sergeant Roland R. HINES, FR 077–38–9169, United States Air Force.**

**ACM 24002.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 March 1983.

Decided 6 July 1984.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

DECISION

MILLER, Judge:

Tried before a general court-martial with members, the accused was convicted of

committing various indecent, lewd, and lascivious acts with, and sodomizing his dependent step-daughters in violation of Articles 125 and 134, U.C.M.J., 10 U.S.C. §§ 925, 934. His approved sentence extends to a bad conduct discharge, confinement at hard labor for two years, and reduction to airman basic.

All three eyewitnesses to the offenses (the victims and their mother, who was the wife of the accused) honored subpoenas that required them to appear at trial. Once sworn, however, all three witnesses refused to comply with orders issued by the military judge to testify. Subsequently, following the government's introduction of evidence to establish that earlier out-of-court statements issued by each of these three eyewitnesses bore circumstantial guarantees of trustworthiness equivalent to those inherently possessed by long recognized exceptions to the hearsay rule, these out-of-court statements were admitted into evidence pursuant to Mil.R.Evid. 804(b)(5) (the newly created residual exception to the hearsay rule).

Had these out-of-court statements been excluded as inadmissible hearsay, five of the six specifications upon which the accused now stands convicted would fail for want of evidence. Particularly in view of the extraordinarily divergent interpretations placed upon this rule by the various circuits of the United States Courts of Appeals and the several United States Courts of Military Review and the varied facts of the Mil.R.Evid. 804(b)(5) issues that abound in this case, the accused asks that our decision include a *de novo* analysis of this rule's intent.

We agree that this is appropriate.

### AN ANALYSIS OF MILITARY RULE OF EVIDENCE 804(b)(5)

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\*   \*   \*   \*   \*   \*

(5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant.

Mil.R.Evid. 804(b)(5)—Fed.R.Evid. 804(b)(5).

### THE COMPONENT PARTS OF RULE 804(b)(5)

We begin this analysis by dissecting the rule into its component parts.

No courts, either military or federal, have experienced any real difficulty interpreting those parts of this rule that deal with the lettered prerequisites for its usage. Looking first at prerequisite (A), a materiality requirement exists for the admissibility of any evidence in a court-martial or trial. With respect to prerequisite (B), certainly no mystery enshrouds the question of whether evidence contained in such a statement is more probative on the point for which it is offered than other evidence that its proponent might have procured through reasonable effort. And finally, given that the general purpose of the Rules of Evidence is "that the truth may be ascertained and proceedings justly determined," Mil.R.Evid. 102—Fed.R.Evid. 102, and that the interest of justice is "the constant and perpetual disposition of legal matters or disputes to render every man his due," *Black's Law Dictionary* 776 (5th Ed.), *Bouvier's Law Dictionary* 1795 (3rd Rev.), prerequisite (C) only requires that

statements proffered under the rule must tend to assure that accused individuals who have actually committed the offenses with which they are charged are convicted and appropriately punished, while those who did not are acquitted and released.

Similarly, the clear terms of the notice requirement contained in the rule's final sentence are objectively determinable, leaving no room for judicial interpretation.

The only remaining part of the rule is the short definitional phrase that describes statements the rule purports to render admissible at courts-martial:

> Statements not specifically covered by any of the foregoing [hearsay] exceptions but having equivalent circumstantial guarantees of trustworthiness....

Despite the seemingly straightforward language of this phrase, an exhaustive review of the opinions of those courts that have unsuccessfully wrestled with the meaning of Rule 804(b)(5) reveals that their difficulties have all centered around varying interpretations of this language.

### "EQUIVALENT CIRCUMSTANTIAL GUARANTEES OF TRUSTWORTHINESS"

To understand the difficulties that courts have experienced in directly applying what appears to be the clear language of the rule's definitional phrase, we examine their decisions. Our analysis has revealed a general compulsion on the part of these courts to disregard the rule of statutory construction that requires a court to implement the unambiguous language of a constitutional statute according to its explicit terms. *Caminetti v. United States,* 242 U.S. 470, 485–486, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452–453 (1916), *Northwest Airlines v. Transport Workers,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750, 763 (1981). Instead, those courts that have experienced difficulty with this portion of the rule have chosen to go behind its statutory language, basing their decisions, instead, either upon decisions of the Supreme Court which predate implementation of the Federal Rules or upon those selected equi-vocating remarks of the Rules Advisory and Congressional Committees contained in the "Notes by the Federal Judicial Center" which supplement each statement of the Federal Rules in the pamphlet, *Federal Rules of Evidence for United States Courts and Magistrates,* originally published by West Publishing Company in 1979. [*hereinafter* referred to as *West's Rules Pamphlet.*]

This was particularly true prior to the Supreme Court's clarification of its declination in 1970 to equate the "Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule," *Dutton v. Evans,* 400 U.S. 74, 86–88, 91 S.Ct. 210, 218–219, 27 L.Ed.2d 213, 225–226 (1970), by its 1980 pronouncement in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 612 (1980), that:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Our review of cases decided by these courts enables us to categorize each difficulty they experienced as stemming from one or more of three distinctly different roots; namely: (1) the Supreme Court's pre-rules holdings in *Bruton v. United States,* 391 U.S. 123, 135–136, 88 S.Ct. 1620, 1627–1628, 20 L.Ed.2d 476, 484–485 (1968), and *Dutton v. Evans, supra,* 400 U.S. at 87, 91 S.Ct. at 219, 27 L.Ed.2d at 226, that under certain circumstances, hearsay statements that would be admissible if pertaining to peripheral evidence, are not admissible, when pertaining to evidence that is "crucial" or "devastating;" (2) a single sentence lifted from the entire "Report of Senate Committee on the Judiciary," which was quoted by the Federal

Judicial Center in its note accompanying Fed.R.Evid. 803(24), *West's Rules Pamphlet*, 1979, *supra*, stating, "It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances;" and (3) the Supreme Court's comment in *Dutton v. Evans*, *supra*, 400 U.S. at 86, 91 S.Ct. at 210, 27 L.Ed.2d at 213, that although the Confrontation Clause and the hearsay rule "stem from the same roots," the rights that each protect have never been identified as congruent or equivalent.

We discuss the roots and eventual judicial demise of each of these difficulties, *seriatim*.

### Otherwise Trustworthy Hearsay Statements As Inadmissible If "Crucial" Or "Devastating"

We look first to those cases which attempted to apply inapplicable Supreme Court holdings from *Bruton v. United States* and *Dutton v. Evans*, both *supra*, to decisions regarding the admissibility of hearsay evidence under Fed.R.Evid. 804(b)(5). The holdings sought to be applied related to a balancing of the import of proffered hearsay evidence against the absence of good faith efforts to produce initial declarants, in determining whether to admit the proffered evidence. A condition precedent to an offer of evidence under Fed.R.Evid. 804(b)(5), on the other hand, is that the initial declarant must be unavailable. Essentially ignoring the "unavailability" aspects of *Bruton* and *Evans*, these cases repeatedly cited *Bruton* and *Evans* as authority for prohibiting the introduction of any evidence under Fed.R.Evid. 804(b)(5), which, even though clearly possessing "circumstantial guarantees of trustworthiness equivalent" to subsections (1) through (5) of Rule 804(b), happened, also, to be either "crucial" to the Government or "devastating" to the accused. *See United States v. Yates*, 524 F.2d 1282, 1285–1286 (D.C.Cir.1975); *United States v. Carlson*, 547 F.2d 1346, 1362 (8th Cir.1977); *United States v. White*, 553 F.2d 310, 314 (2nd Cir.1977); *United States v. Oates*, 560

F.2d 45, 82–84 (2nd Cir.1977); *United States v. Bailey*, 581 F.2d 341, 350–351 (3rd Cir.1978); *United States v. Alvarez*, 584 F.2d 694, 702 n. 10 (5th Cir.1978). *See also McKethan v. United States*, 439 U.S. 936, 936–940, 99 S.Ct. 333, 334–335, 58 L.Ed.2d 333, 333–334 (1978) (Stewart, Justice, dissenting from a denial of certiorari).

Despite several decisions to the contrary, *see United States v. Medico*, 557 F.2d 309, 316 (2nd Cir.1977); *United States v. West*, 574 F.2d 1131, 1138 (4th Cir.1978); *United States v. Nick*, 604 F.2d 1199, 1202–1203 (9th Cir.1979), it was not until *Evans* could be read in light of the Court's further pronouncement in *Roberts* that this unwritten and unnecessary "additional requirement" of Fed.R.Evid. 804(b)(5) was finally laid to rest. *See United States v. Sarmiento-Perez*, 633 F.2d 1092, 1103 (5th Cir. 1980), *United States v. Perez*, 658 F.2d 654, 661, 662 (9th Cir.1981); *United States v. Thevis*, 665 F.2d 616, 632 (5th Cir.1982); *United States v. McKinney*, 707 F.2d 381, 383–384 (9th Cir.1983). *Compare United States v. Young Brothers*, 728 F.2d 682 (5th Cir.1984); *United States v. Barlow*, 693 F.2d 954 (6th Cir.1982); *United States v. Mastrangelo*, 693 F.2d 269 (2nd Cir. 1982); *United States v. Steele*, 685 F.2d 793 (3rd Cir.1982); *United States v. Boulahanis*, 677 F.2d 586 (7th Cir.1982); *United States v. Van Lufkins*, 676 F.2d 1189 (8th Cir.1982); *United States v. Murphy*, 696 F.2d 282 (4th Cir.1982); *United States v. Papadakis*, 572 F.Supp. 1518 (D.C.N.Y. 1983).

### The Residual Hearsay Exceptions Will Be Used Very Rarely, And Only In Exceptional Circumstances

Following receipt from the Supreme Court of the proposed Federal Rules of Evidence, the House Committee on the Judiciary immediately rejected the residual hearsay rules proposed therein, describing them in its "Report of House Committee on the Judiciary" as "injecting too much uncertainty into the law of evidence and impairing the ability of practitioners to prepare for trial."

However, when the Senate Committee on the Judiciary received the rules, it disagreed with the House's conclusion. Apparently agreeing with the intent and limitations of the two proposed rules as set forth by the Rules Advisory Committee in its accompanying "Introductory Note: The Hearsay Problem" (see the discussion of this note, *infra* ), it was specifically recognized that the "well-recognized exceptions to the hearsay rule may not encompass every situation in which the reliability and appropriateness of a particular piece of hearsay evidence make clear that it should be heard and considered by the trier of fact." Accordingly, it chose to reinstate both residual hearsay rules that had been deleted by the House Committee in its Report.

Recognizing the inevitability of conflict with respect to such a reinstatement upon its arrival at a Joint Conference Committee, the Senate Committee also included some conciliatory language in its Report. Its "olive branch" in this instance was agreement "with those supporters of the House version who felt that an overly broad residual hearsay exception could emasculate the hearsay rule." The only "cure" it offered, however, was the addition of the three lettered conditions precedent to the admission of hearsay evidence under the rules, that we discussed earlier under our title, THE COMPONENT PARTS OF RULE 804(b)(5), *supra.* The Senate Committee also used a few sentences of conciliatory language in its Report that it obviously borrowed from the rationale that the Rules Advisory Committee had used in its introductory note to reject a proposal that the entire system of class exceptions be abandoned in favor of individual treatment of proffered hearsay statements; to wit:

> It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b) . . . . It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.

Apparently satisfied that the Senate's addition of its three lettered conditions precedent to the admission of evidence under the rules had eliminated its initial fear that their adoption would inject "too much uncertainty into the law of evidence," the Conference Committee resolved the House's other fear. By adding the notice requirement to the Senate's version of the rules, it assured "the [continued] ability of practitioners to prepare for trial." Subsequently, both rules were enacted without further comment.

Ironically, it was the first sentence of this conciliatory language the Senate Report had borrowed from the notes of the Advisory Committee, which eventually formed the basis of an attempt by a number of federal courts to limit the applicability of Fed.R.Evid. 804(b) solely to "rare" and "exceptional" evidence. *See United States v. Palacios*, 556 F.2d 1359, 1363 n. 7 (5th Cir.1977); *United States v. Medico, supra*, 557 F.2d at 320 (Mansfield, Cir.J., dissenting); *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir.1977); *United States v. Bailey, supra,* at 346–347; *United States v. Cain*, 587 F.2d 678, 681–682 (5th Cir.1979); *United States v. Kim*, 595 F.2d 755, 764–766 (D.C.Cir.1979); *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979); *DeMars v. Equitable Life Assur. Soc. of U.S.*, 610 F.2d 55, 61 (1st Cir.1979); *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir.1980); *United States v. Thevis, supra,* at 629.

The efforts of these courts, however, were unsuccessful. *United States v. Thevis, supra,* stands as the only case since *Roberts* that has cited this isolated sentence from the Report of the Senate Judiciary Committee, and, although no court has found it necessary to specifically disavow the rationale of these, now, discredited de-

cisions, continued support for the position that they once espoused no longer exists.

*The "Trustworthiness" Requirement Of Fed.R.Evid. 804(b)(5) Is Separate And Distinct From The Reliability Requirement Of The Confrontation Clause. Accordingly, Separate Tests Must Be Conducted As To Each One Before Hearsay Evidence, Otherwise Admissible Under Fed.R.Evid. 804(b)(5), May Be Admitted At Trial.*

Five years following the Chief Justice's appointment of an Advisory Committee to preliminarily draft the current Federal Rules of Evidence and one year following that committee's completion of this preliminary draft, the Supreme Court stated, in *Dutton v. Evans, supra,* 400 U.S. at 86, 91 S.Ct. at 218, 27 L.Ed.2d at 225–226:

> It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now.

The reason given by the Court for its declination to equate the two concepts was concisely stated in footnote 7 of its opinion, immediately following the language just quoted:

> Present hearsay law does not merit a permanent niche in the Constitution: indeed; its ripeness for reform is a unifying theme of evidence literature.

The "Introductory Note; The Hearsay Problem," with which the Advisory Committee submitted its preliminary and all subsequent drafts of its proposed Federal Rules, had advised the Court that the hearsay rule as evolved by the common law was the target of legitimate criticisms:

> it is bulky and complex, [it] fails to screen good from bad hearsay realistically, and [it] inhibits the growth of the law of evidence.

After further advising the Court that "no one advocates excluding all hearsay" evidence

> (when the choice is between evidence which is less than best and no evidence

at all, only clear folly would dictate an across-the-board policy of doing without),

it examined three possible approaches to alleviating these criticisms, that it could have taken in its draft of the proposed Federal Rules, namely:

> (1) abolish the rule against hearsay and admit all hearsay; (2) admit hearsay possessing sufficient probative force, but with procedural safeguards; (3) revise the present system of class exceptions.

Having chosen the last of these alternatives, to wit: the creation of additional residual exceptions to the hearsay rule, designed to admit

> hearsay statements not within one of the [previously] specified [common law] exceptions "but having comparable circumstantial guarantees of trustworthiness;"

the Committee averred that

> [t]his plan is ... calculated to encourage growth and development in this area of the law, while conserving the values and experience of the past as a guide to the future.

Finally, in recognition of the fact that under [decisions of] recent [Supreme Court] cases the impact of the [Confrontation] clause clearly extends beyond the confines of the hearsay rule,

it noted

> to avoid inviting collisions between them, [all] the exceptions ... are stated in terms of exemption from the general exclusionary mandate of the hearsay rule, rather than in positive terms of admissibility.

Retrospectively, the consistency of the Supreme Court's position in *Evans* with that set forth by the Rules Advisory Committee in its initial draft of the proposed Federal Rules of Evidence that was before the Court when it decided *Evans,* was not coincidental.

Apparently, however, prior to the Supreme Court's 1980 pronouncement in *Roberts* equating the "indicia of reliability" required by the Confrontation Clause to an adequate showing of particularized guarantees of trustworthiness required today by those portions of Fed.R.Evid. 804(b)(5) and

803(24) originally devised by the Advisory Committee, this was not the case.

For although no Federal Circuit Court unequivocally asserted that evidence admitted under the criteria of Fed.R.Evid. 804(b)(5) must be separately tested for constitutionality under the Confrontation Clause of the Sixth Amendment, prior to *Roberts,* such separate testing, under the rationale that the very language of *Evans* might well have been meant to create just such a requirement, was nearly universally utilized. *See United States v. Yates, supra,* 524 F.2d at 1285–1286; *United States v. Carlson, supra,* 547 F.2d at 1355–1357; *United States v. Bailey, supra,* 581 F.2d at 345, 350; *United States v. Love,* 592 F.2d 1022, 1027 (8th Cir.1979); *United States v. Balano,* 618 F.2d 624, 627 (10th Cir.1980); *United States v. Bienvenue,* 632 F.2d 910, 914–915 (1st Cir.1980); *United States v. Sarmiento-Perez, supra,* 633 F.2d at 1096. *See also* three cases decided after *Roberts;* to wit: *Steele v. Taylor,* 684 F.2d 1193, 1202 (6th Cir.1982); *United States v. Mastangelo, supra,* 693 F.2d at 272; and *United States v. Barlow, supra,* 693 F.2d at 964.

Incredibly, in *United States v. Carlson, supra,* this same rationale was carried to such an extreme that despite the Court's specific finding that the out of court statement in question met Fed.R.Evid. 804(b)(5)'s criteria for admissibility, it opted to base its decision upon its finding that the accused had waived his Sixth Amendment rights with regard to the out of court statement, rather than equate the rule's criteria to that of the Sixth Amendment. Also, in a unique reversal of the rationale for separate testing, one court of military review utilized this identical rationale to look beyond its initial determination that an out of court statement it was examining failed to meet the "guarantees of trustworthiness" criteria of Mil.R.Evid. 804(b)(5) (identical to Fed.R.Evid. 804(b)(5)), to a separate determination of whether it might, nevertheless, have passed constitutional muster for admissibility under the "reliability standards" of the Confrontation Clause, *United States v. Thornton,* 16 M.J. 1011 (A.C.M.R.1983).

Once again, however, the elucidation of *Dutton,* provided by the Supreme Court in *Roberts,* knocked the underpinnings out from under the restrictive interpretation these courts had attempted to impose upon the residual hearsay exception. Soon, all the circuits with the exception of the 2nd, 6th, and D.C., citing the incisive pre-*Roberts* decision of the 4th Circuit in *United States v. West, supra,* 574 F.2d at 1137–1138, recognized the coextensive nature of the term "equivalent circumstantial guarantees of trustworthiness" from Fed.R. Evid. 804(b)(5) with the term "indicia of reliability" standard set by the Supreme Court for compliance with legitimate protections afforded by the Confrontation Clause. *See United States v. Thevis, supra,* 665 F.2d at 628–629; *United States v. Walker,* 696 F.2d 277, 281 (4th Cir.1982); *United States v. Murphy, supra,* 696 F.2d at 286; *United States v. Young Brothers, supra,* 728 F.2d at 692. *See also Payne v. Janasz,* 711 F.2d 1305, 1314 (6th Cir.1983); *United States v. Katsougrakis,* 715 F.2d 769, 776 (2nd Cir.1983); *United States v. Mastrangelo,* 533 F.Supp. 389, 390 (D.C.N. Y.1982); *United States v. Mastrangelo,* 693 F.2d 269 (2nd Cir.1982); *United States v. Papadakis, supra,* 572 F.Supp. at 1526–1527. *Compare United States v. Lilley,* 581 F.2d 182, 187–188 (8th Cir.1978); *United States v. Alvarez, supra,* 584 F.2d at 701; *United States v. Love, supra,* 592 F.2d at 187–188; *United States v. Goins,* 593 F.2d 88, 91 (8th Cir.1979); *United States v. Mabry,* 596 F.2d 293, 296–297 (8th Cir.1979); *United States v. Oliver,* 626 F.2d 254, 260 (2nd Cir.1980); *United States v. Sarmiento-Perez, supra,* 633 F.2d at 1098–1101; *United States v. Palumbo,* 639 F.2d 123, 129–131 and n. 5 (3rd Cir.1981) (Adams, J., concurring); *United States v. Riley,* 657 F.2d 1377, 1382–1383 (8th Cir. 1981).

## THE ORIGINAL LANGUAGE OF THE RESIDUAL HEARSAY EXCEPTIONS: A DRAMATIC DEPARTURE FROM THE COMMON LAW

Having demonstrated the flaws that existed in the rationale of those Courts that,

in the past, experienced difficulty literally applying the language of Fed.R.Evid. 804(b)(5), and having further demonstrated that the decisions of these courts have, for the most part been discredited, we turn briefly to an examination of the assumption that apparently underlay each of these decisions, namely: that the residual hearsay rule's authors had not intended the dramatic departure from common law hearsay concepts that a literal application of the residual hearsay rules engender.

The comments of the Rules' authors, entitled "Introductory Note; The Hearsay Problem" which accompanied each draft of the Rules that was submitted to the Supreme Court, specifically belie this assumption.

After listing the three conditions that Anglo-American tradition would ideally require of all witnesses who testify at trial,[1] the Advisory Committee concisely stated the pragmatic problem arising from an absolute commitment to such an ideal restriction:

> Common sense tells that much evidence which is not given under these three conditions may be inherently superior to much that is. Moreover, when the choice is between evidence which is less than best and no evidence at all, only clear folly would dictate an across-the-board policy of doing without. The problem thus resolves itself into effecting a sensible accommodation between these considerations and the desirability of giving testimony under the ideal conditions.

The Advisory Committee then examined the solution evolved by the common law to wit: "a general rule excluding hearsay but subject to numerous exceptions under circumstances supposed to furnish guarantees of trustworthiness," and found it unsatisfactory. The Committee, agreeing with criticisms that such a scheme is unnecessarily "bulky and complex, fails to screen good from bad hearsay realistically, and inhibits the growth of the law of evidence,"

then evaluated each of three alternative approaches to rectifying these defects. In the Committee's words:

> Since no one advocates excluding all hearsay, three possible solutions may be considered: (1) abolish the rule against hearsay and admit all hearsay; (2) admit hearsay possessing sufficient probative force, but with procedural safeguards; (3) revise the present system of class exceptions.

It rejected the first approach because it was

> unconvinced of the wisdom of abandoning the traditional requirement of some particular assurance of credibility as a condition precedent to admitting the hearsay declaration of an unavailable declarant.

While noting that

> [I]n criminal cases, the Sixth Amendment requirement of confrontation would no doubt move into a large part of the area presently occupied by the hearsay rule in the event of the abolition of the latter;

it concluded that, "[t]he resultant split between civil and criminal evidence [would be] an undesirable development."

> And, it rejected the second approach as involving too great a measure of judicial discretion, minimizing the predictability of rulings, enhancing the difficulties of preparation for trial, adding a further element to the already over-complicated congeries of pretrial procedures, and requiring substantially different rules for civil and criminal cases.

But, it accepted the third approach. It decided to revise the then existing system of class exceptions, so as to

> encourage growth and development in this area of the law, while conserving the values and experience of the past as a guide to the future.

Unfortunately, the language used by the Committee in the final draft of its rules and comments less clearly expressed its

---

**1.** The three traditional requirements of ideal trial testimony cited by the Advisory Committee, included that it be: (1) under oath, (2) in the personal presence of the trier of fact, and (3) subject to cross-examination.

intent than did its preliminary draft. In attempting to accommodate comments received following circulation of its preliminary draft, the Committee engaged in what it undoubtedly considered to be simply a cosmetic change [2] and altering the language of both that portion of its comments specifically dealing with its proposed residual hearsay rules and the proposed rules themselves.

Originally, the pertinent comments and rules of the preliminary draft had read:

## ARTICLE VIII. HEARSAY

*Introductory Note: The Hearsay Problem*

\*     \*     \*     \*     \*     \*

(3) The approach to hearsay in these rules consists of a general rule excluding hearsay, with two broadly phrased exceptions under which evidence is not required to be excluded even though hearsay. The first exception prescribes the conditions under which hearsay is admissible without regard to unavailability of the declarant; the second does the same for declarants who are unavailable. The traditional hearsay exceptions are drawn upon to illustrate the applicability of the two exceptions.

\*     \*     \*     \*     \*     \*

*Rule [8–03.] [8–04.] Hearsay Exceptions: [Availability of Declarant Immaterial] [Declarant Unavailable]*

(a) General Provisions. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy [not likely to be enhanced by calling the declarant as a witness, even though he is available.] [and the declarant is unavailable as a witness.]

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of statements

conforming with the requirement of this rule:

[Following, as "illustrations" under proposed rule 803(b), are enumerated the first 23 "exceptions" to the hearsay rule incorporated in proposed rule 803, as ultimately revised.] [Following, as "illustrations" under proposed rule 804(b) are enumerated the first 5 "exceptions" to the hearsay rule incorporated in proposed rule 804(b), as ultimately revised.]

In the Committee's final draft, this language was changed, so as to read:

## ARTICLE VIII: HEARSAY

*Introductory Note: The Hearsay Problem*

\*     \*     \*     \*     \*     \*

(3) The approach to hearsay in these rules is that of the common law, i.e., a general rule excluding hearsay, with exceptions under which evidence is not required to be excluded even though hearsay. The traditional hearsay exceptions are drawn upon for the exceptions, collected under two rules, one dealing with situations where availability of the declarant is regarded as immaterial and the other with those where unavailability is made a condition to the admission of the hearsay statement. Each of the two rules concludes with a provision for hearsay statements not within one of the specified exceptions "but having comparable circumstantial guarantees of trustworthiness." Rules 803(24) and 804(b)(6).

\*     \*     \*     \*     \*     \*

*Rule [803.] [804.] Hearsay Exceptions: [Availability of Declarant Immaterial] [Declarant Unavailable]*

[     ] [ (b) *Hearsay exceptions.*] The following are not excluded by the hearsay rule, [even though the declarant is available] [if the declarant is unavailable as a witness]:

---

**2.** All of the Committee's comments previously quoted, herein, remained unchanged from its preliminary to its final draft. Of the approximately 2200 words the Committee used in its introductory note to explain the rationale for its proposed change to the common law approach to hearsay evidence, less than 100 of them were changed in its accommodation of comments to its preliminary draft.

[After enumerating, as exceptions, the 23 "illustrations" referenced in the initial draft of proposed rule 803, a 24th exception has been added which provides:] [After enumerating, as exceptions, the 5 "illustrations" referenced in the initial draft of proposed rule 804(b), a 6th exception provides:] [ (23) ] [ (6) ] *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

Had the Advisory Committee's original language remained unchanged, certainly, the ambiguity ascribed to the modified language contained in its revised proposed rules 803(24) and 804(b)(6) as eventually promulgated following Congress' addition of non-controversial procedural requirements as Federal Rules of Evidence 803(24) and 804(b)(5), could not have existed.

Clearly, neither the Advisory Committee who penned the modification, nor the Supreme Court, who, in the words of Justice Douglas, placed its "imprimatur" upon it by forwarding it along with the other proposed rules to Congress, intended it to substantively change the revolutionary approach which had been enunciated more clearly in the preliminary draft.

Read literally, which they must be, the effect of the two residual rules upon the former system of class exceptions is identical to that which would have existed if the wording of the preliminary draft had survived. Although the revised system of class exceptions to the hearsay rule may still be criticized as bulky and complex, it can not be charged that it either fails to "screen good from bad hearsay realistically, or inhibits the growth of the law of evidence."

To the contrary, in accordance with a literal reading of the two residual hearsay exceptions, the current, modified system of class exceptions both encourages the realistic screening of good from bad hearsay and the

growth and development [of] this area of the law, while [at the same time] conserving [both] the values and experience of the past as a guide to the future.

## THE LITERAL MEANING OF THE PHRASE "EQUIVALENT CIRCUMSTANTIAL GUARANTEES OF TRUSTWORTHINESS"

Having positively established that Fed.R. Evid. 804(b)(5) is to be literally applied and, also, having demonstrated that the meaning of all this rule's phrases, other than the one referring to "equivalent circumstantial guarantees of trustworthiness," are so self-evident as to have caused virtually no problems in the case law that surrounds the rule, we focus our attention now on the literal meaning of this phrase.

The key word in the phrase, of course, is the term "equivalent." Clearly, "equivalent" does not mean identical. Accordingly, no court has ever suggested that the phrase restricts those circumstantial guarantees of trustworthiness that may be considered in determining the admissibility of hearsay statements to the identical considerations that have been specified by the common law with regard to those traditional exceptions that are specified elsewhere under the two rules.

A few courts have, however, suggested that the term was intended to restrict consideration to those circumstantial guarantees of trustworthiness that are identical in type to those that are acceptable for the specifically enumerated exceptions.

The most restrictive of these cases was *United States v. Friedman,* 593 F.2d 109 (9th Cir.1979), in which a 9th Circuit court held that the "equivalent circumstantial guarantees of trustworthiness" referenced by the residual exception to Fed.R.Evid. 803(24) must relate directly to the "perception, memory, narration, or sincerity" that the declarant displayed in making his out-of-court declaration. In essence, this holding was based upon the court's arbitrary determination that, since each of the enumerated exceptions specified by the rule was dependent upon circumstantial proof of such qualities, "equivalency" required that a similar restriction be applied to the

guarantees of trustworthiness that could be considered in assuring the reliability of out-of-court statements admitted under its residual exception.

Similar, though less restrictive, logic was also applied by the 3rd Circuit in its consideration of those "equivalent circumstantial guarantees of trustworthiness" that could properly be considered in determinations of whether to admit out-of-court declarations under the residual exception of Fed.R.Evid. 804(b). In *United States v. Bailey, supra,* 581 F.2d at 348, the court held that such considerations should be restricted to those "circumstantial guarantees of trustworthiness that (1) were indicative of a strong propensity for the declarant's truthfulness, (2) had previously presented an opportunity for cross-examination, or (3) were related to the inherent reliability of the contents of the statement, in and of themselves, because of the identity of the declarant and his relationship to the individual to whom the statement pertained. Again, the court's rationale stemmed from its determination that since each other exception specifically enumerated was directly reliant upon one or another of these three considerations for their admissibility, so, too, should be the rule's residual exception.

The vast majority of courts, however, have declined invitations to impose such arbitrarily conceived restrictions upon the language of the residual exceptions. Instead, heeding the intent of the exceptions, to wit, "to encourage growth and development in this area of the law," the courts have looked to all circumstantial guarantees of trustworthiness that are of equivalent or greater reliability than the least reliable of those legitimately considerable under any of the specifically enumerated exceptions, in combination with all other such existing circumstantial guarantees of trustworthiness relating to specific out-of-court declarations whose admission is sought, to determine whether or not its trustworthiness is, in fact, equivalent to or greater than that of any of the rules' specifically enumerated exceptions and, therefore, sufficient to satisfy that indicia of reliability necessary to warrant admission

in compliance with the Confrontation Clause of the Sixth Amendment.

A few observations of federal circuit courts that support this position, follow:

(1) The district [or trial] court enjoys a considerable measure of discretion in deciding whether to admit hearsay evidence under [the residual hearsay exceptions;]

*Moffett v. McCauley,* 724 F.2d 581, 583 (7th Cir.1984). *See also United States v. Van Lufkins,* 676 F.2d 1189, 1192 (8th Cir.1982); *Huff v. White Motor Corp., supra,* 609 F.2d at 292; *United States v. Friedman, supra,* 593 F.2d at 118; *United States v. Carlson, supra,* 547 F.2d at 1354.

(2) [W]here evidence complies with the spirit, if not the latter (sic), of several exceptions, admissibility is appropriate under the residual hearsay exception;

*United States v. McPartlin,* 595 F.2d 1321, 1350 (7th Cir.1979). *See also Moffett v. McCauley, supra,* 724 F.2d at 583.

(3) [A] report [that] falls nearly within the terms of the business records exception [should be admitted under the residual exception if it] does have circumstantial guarantees of trustworthiness sufficient to meet the trustworthiness requirement of Rule 803(24).

*Moffett v. McCauley, supra,* 724 F.2d at 584.

(4) Even though it does not easily fit into any enumerated hearsay exceptions, see Fed.R.Evid. 803(1)–(24), [a] postmark's circumstantial guarantees of trustworthiness make it a perfect candidate for Fed. R.Evid. 803(24), the so-called "expanding exception."

*United States v. Cowley,* 720 F.2d 1037, 1045 (9th Cir.1983).

(5) [T]he trial court must determine whether the substance of [an out-of-court declaration] possesses "circumstantial guarantees of trustworthiness" equivalent to the other exceptions included in Rule 804. In making this determination the trial court should consider the declarant's relationship with both the defendant and the government, the declarant's motivation to [make the out-of-court dec-

laration] ... the extent to which [it] ... reflects the declarant's personal knowledge, whether the declarant has ever recanted [it] and the existence of corroboration evidence.

*United States v. Barlow, supra,* 693 F.2d at 962.

(6) Finally, other factors which have no direct bearing on "circumstantial guarantees of truthworthiness" (sic) may be considered to determine whether the "purposes of [the rules of evidence] and the interests of justice will best be served" by the admission of [out of court declarations.] We therefore believe the trial court may examine the reasons for the witness' unavailability.

*Id.*

(7) The district court [correctly] determined that the [out-of-court declarant's] statements were reliable. It found that [the in-court witness'] testimony was admissible because the out-of-court declarant] made his statement to her shortly after the incident and it was a fortuitous circumstance that caused [the in-court witness] and [the out-of-court declarant] to be at the same place.

*United States v. Van Lufkins, supra,* 676 F.2d at 1192.

(8) The court [correctly] concluded that [the out of court declarant's] statement to the FBI agent was sufficiently trustworthy because it was corroborated by other evidence [which included a confession by the defendant.]

*Id.*

(9) That Congress was unwilling to allow the admission of all recent sense perceptions is no indication that it intended to exclude all such perceptions. In the proper circumstances, Rule 804(b)(5) is an appropriate vehicle for admitting certain recent sense impressions.

*Robinson v. Shapiro,* 646 F.2d 734, 742–743, n. 6 (2nd Cir.1981). *See also United States v. Medico, supra,* 557 F.2d at 315.

(10) [The unavailable witness] immediately returned ... to [the in-court witnesses] and relayed to them [the out-of-court declaration he had heard.] He had

little motive to dissemble [and two physical conditions] supported [his version of the out-of-court declaration.] It strains credulity that [the unavailable witness] would have fabricated such a story. Thus, the circumstances surrounding the [unavailable witness'] statement in this case demonstrate a level of trustworthiness at least equivalent to that of evidence admitted under traditional hearsay exceptions.

*Robinson v. Shapiro, supra,* 646 F.2d at 743. *See also United States v. Iaconetti,* 406 F.Supp. 554, 559 (E.D.N.Y.1976), *aff'd,* (as possessing sufficient "indicia of reliability") *United States v. Iaconetti,* 540 F.2d 574 (2nd Cir.1976).

(11) There were present very exceptional circumstances providing substantial guarantees of trustworthiness of [the out-of-court declarations] probably exceeding by far the substantial guarantees of trustworthiness of some of the other § 804(b) hearsay exceptions ... The most impressive [of these] comes from the corroboration provided by the observations of the agents, the pictures they took and their recordings of the conversations.

*United States v. West, supra,* 574 F.2d at 1135. *See also United States v. Barlow, supra,* 693 F.2d at 961.

(12) To be sure, Hardy may have considered it expedient to conjure up a story consistent with innocence. But we cannot ignore the fact that his statement is strongly corroborated by a number of factors which, we are convinced, supply "equivalent circumstantial guarantees of trustworthiness." Foremost among the corroborating factors is the testimony of the first two witnesses which clearly [corroborated the averred out-of-court declaration.] The reliability of Hardy's statement was reinforced further by the investigation Agent Carr conducted following the interview. He found that all the details of Hardy's statement, including the places he said he had been while en route, checked out, and nothing was uncovered to refute his version of the

events. In sum, whatever measure of untrustworthiness we might give a self-serving statement in determining its admissibility under rule 804(b)(5), we conclude that under the circumstances of this case a sufficient demonstration of trustworthiness was made to satisfy the rule's threshold requirement.

*United States v. Ward,* 552 F.2d 1080, 1083 (5th Cir.1977).

(13) The statement sought to be admitted under Rule 804(b)(5) must have "circumstantial guarantees of trustworthiness" equivalent to those inherent in the other four exceptions of Rule 804(b). In assessing the qualitative degree of trustworthiness of a particular statement, courts should inquire into the reliability and necessity for the statement.... There is a strong indication of reliability in [the out-of-court declarant's out-of-court declaration.] His statements were made under oath and any misrepresentation or deliberate falsehood might have subject[ed] [the out-of-court declarant] to the sanctions of perjury. [The out-of-court declarant was relating facts surrounding a cocaine transaction in which he participated and of which he possessed firsthand knowledge. Therefore, there was no reliance upon potentially erroneous secondary information and the possibility of faulty recollection was minimized. Moreover, [the out-of-court declarant] never recanted his grand jury testimony or expressed any belated reservation as to its accuracy. Rather, he specifically stated at the time of trial that he told the truth to the grand jury. [The out of court declarant's] testimony was not only reliable, but there was also a substantial need for it at trial since [the out-of-court declarant was unavailable at trial ... and there were no other individuals to the Government's knowledge who could testify as to the ... cocaine transaction.... Therefore, the District Court ... did not err in finding [the out-of-court declarant's] testimony to be trustworthy within the meaning of Rule 804(b)(5).

*United States v. Carlson, supra,* 547 F.2d at 1354. *See also United States v. Barlow, supra,* 693 F.2d at 960.

## THE ADMISSIBILITY UNDER MIL.R. EVID. 804(b)(5) OF THE OUT-OF-COURT DECLARATIONS ADMITTED AT TRIAL IN THIS CASE

Having concluded our analysis of Fed.R. Evid. 804(b)(5), we now apply our interpretations of that rule to the facts of this case.

As indicated at the outset of this opinion, all three eyewitnesses to the offenses of which the accused stands herein convicted refused to comply with orders issued by the military judge for them to testify. And had the military judge not ruled their earlier out-of-court declarations admissible under Mil.R.Evid. 804(b)(5), at least five of the six specifications of which he convicted the accused would have fallen for want of evidence.

Our remaining tasks are simply (a) to examine each of the various out-of-court statements that were admitted into evidence to assure that their admission complied with the criteria for admission under Mil.R.Evid. 804(b)(5) that we have announced, herein, and then (b) to examine each of the specifications of which the accused was convicted in light of the evidence that we have determined was properly admitted to insure that sufficient evidence remains to sustain each conviction.

## THE OUT-OF-COURT STATEMENTS ADMITTED INTO EVIDENCE PURSUANT TO MIL.R.EVID. 804(b)(5)

■ The three statements the military judge admitted into evidence pursuant to the residual exception to the hearsay rule consisted of: (1) a typed sworn statement by the accused's wife (the mother of the victims) describing in very certain terms her observation of the accused engaging in the act alleged by Charge II, Specification 4; (2) a typed sworn statement by the accused's youngest step-daughter describing in very certain terms her observations of the accused as she was victimized by him in the acts alleged by Charge II, Specification 1; and (3) a typed sworn statement

by the accused's eldest step-daughter describing in very certain terms her observations of the accused as she was victimized by him in the acts alleged by Charge I, Specification 1, and Charge II, Specifications 2, 3, and 4.

Although he admitted each of these statements pursuant to Mil.R.Evid. 804(b)(5), unfortunately, the military judge failed to enumerate on the record those special facts and circumstances which, in his judgment, indicated that the statements had a sufficiently high degree of trustworthiness to justify their admission. *See* Report of Senate Committee on the Judiciary. Accordingly, we, as an appellate court, are placed in the same position as was the 7th Circuit Court in *Huff v. White Motor Corp., supra,* at 291; we must place ourselves in the judge's position, reviewing the special facts and circumstances of record, to independently determine if they established a sufficiently high degree of trustworthiness to demonstrate that the judge did not abuse his discretion by admitting the three statements.

Fortunately, such special facts and circumstances are so abundantly demonstrated in this particular record that this task causes us little difficulty.

First, each of the three out-of-court declarants signed their respective statements under oath. *See Rice v. Marshall,* 709 F.2d 1100, 1104 (6th Cir.1983); *Mattes v. Gagnon,* 700 F.2d 1096, 1104 (7th Cir.1983); *United States v. Chappell,* 698 F.2d 308, 313 (7th Cir.1983); *United States v. Friedman, supra,* 593 F.2d at 538; *United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir.1977); *United States v. Carlson, supra,* at 1354.

Second, although the declarants' statements were prepared by Government agents, following extensive interviews, the detailed circumstances of how those interviews were conducted tended to affirm their accuracy and trustworthiness, rather than detract from these qualities. *See United States v. Barlow, supra,* at 962; *United States v. Van Lufkins, supra,* at 1192; *United States v. Friedman, supra,*

at 538; *United States v. Bailey, supra,* at 349; *United States v. West, supra,* at 1138; *United States v. Ward, supra,* at 1083.

Third, each of the three out-of-court declarants bore a special relationship to the accused. Pecuniarily, all three were members of the accused's household, financially dependent upon him for their livelihood (neither the wife nor his step-daughters had any employment outside his household, and both children were fulltime students in the public schools). The societal stigma that automatically attached to all three of the declarants (the mother, for permitting the event to occur, and the two step-daughters, having admitted that their step-father had engaged them in incestuous sexual activities) must be considered as nothing less than personally devastating. *See* Mil.R. Evid. 804(b)(3); *Moffett v. McCauley, supra,* at 583–584; *United States v. McPartlin, supra,* at 1350. Also, *see Mattes v. Gagnon, supra,* at 1104; *United States v. Barlow, supra,* at 960–962; *United States v. Di Rodio,* 565 F.2d 573, 576 n. 4 (9th Cir.1977).

Fourth, none of the three declarants, even though refusing orders of the military judge to testify which subjected them to personal criminal liability, either recanted the subject declarations or gave any indication of any inclination to recant those declarations. *See Rice v. Marshall, supra,* at 1104; *United States v. Carlson, supra,* at 1354; *United States v. Mastrangelo,* 533 F.Supp. 389, 391 (1982).

Fifth, the reasons stated by each of the declarants at trial for refusing to testify (i.e.: the wife refused to testify because it is "in the best interests of my family and my husband," it will keep the family "unite[d]," and "God, he judged my husband already;" the youngest step-daughter refused to testify because "I love my dad and I want him to stay in the house;" and the eldest step-daughter refused to testify because it is "in the best interests of my sister and brother," and "I believe my testimony may give him a more severe sentence than if I didn't testify") tended to reaffirm

the veracity of their respective out-of-court declarations. *See United States v. Barlow, supra,* at 962; *United States v. Carlson, supra,* at 1354; *United States v. Leslie,* 542 F.2d 285, 290 (5th Cir.1976); *United States v. Mastrangelo, supra,* at 391.

Sixth, the reputation for truthfulness of each of the declarants was successfully established by independent testimony. *See United States v. Chappell, supra,* at 313; *United States v. Ward, supra,* at 1083; *United States v. Puco,* 476 F.2d 1099, 1104 (2nd Cir.1973).

Seventh, no cogent motivation was suggested by the accused for either his wife or his youngest step-daughter to lie. The only motivation suggested by the accused for his eldest step-daughter to lie, was her desire to leave his household, a motivation, which, unfortunately for the accused, was also entirely consistent with the truthfulness of the allegations contained in her out-of-court declaration. *See United States v. Barlow, supra,* at 962; *Robinson v. Shapiro, supra,* at 743; *United States v. Bailey, supra,* at 349; *United States v. Ward, supra,* at 1083.

Eighth, all three declarants clearly had first hand knowledge of the events to which their out-of-court declarations pertained. *See Mattes v. Gagnon, supra,* at 1104; *United States v. Barlow, supra,* at 962; *United States v. Bailey, supra,* at 349; *United States v. Medico, supra,* at 315; *United States v. Carlson, supra,* at 1354.

Ninth, the fact that "things weren't right" within the accused's family during the time periods to which each of the declarations pertained was corroborated by the testimony of a neighbor and family friend. *See United States v. Barlow, supra,* at 962; *United States v. Bailey, supra,* at 349; *United States v. West, supra,* at 1135; *United States v. Ward, supra,* at 1083.

Tenth, each of the three out-of-court declarations tended to corroborate the truthfulness of the others. *See United States v. Van Lufkins, supra,* at 1192; *United States v. White,* 553 F.2d 310, 314 (2nd Cir.1977); *United States v. Leslie, supra,* at 290.

Eleventh, and, perhaps most importantly of all, the accused voluntarily confessed to having committed all the acts alleged against him by each of the out-of-court declarants in their respective declarations (*albeit,* the time frame of his confession was off by 7 months in Charge I, Specification 1, and 5 months in Charge II, Specification 3), except for one allegation contained in his eldest step-daughter's allegation that served as the basis for Charge II, Specification 2. *See Mattes v. Gagnon, supra,* at 1104; *United States v. Van Lufkins, supra,* at 1192; *United States v. Oates,* 560 F.2d 45, 81 (2nd Cir.1977); *United States v. Puco, supra,* at 1104 n. 8.

Accordingly, we are convinced that the record of trial contains ample circumstantial guarantees of trustworthiness related to each of the out-of-court declarations admitted by the military judge to justify his admission of the three of them pursuant to Mil.R.Evid. 804(b)(5). In the words of the 2nd Circuit court in *United States v. Shapiro, supra,* at 743:

> It strains credulity that [the unavailable witnesses] would have fabricated [their stories]. Thus, the circumstances surrounding [each of the unavailable witnesses'] statement[s] in this case demonstrate a level of trustworthiness at least equivalent to that of evidence admitted under traditional hearsay exceptions.

All three out-of-court declarations were properly admitted into evidence and therefore were proper matters for consideration by the fact-finder, below.

## THE EVIDENCE AS IT SUPPORTS THE SPECIFICATIONS

We now turn to our final task, that of assuring the sufficiency of evidence to support each of the specifications.

Charge I, Specification 1, and Charge II, Specification 2, are supported solely by the victim's out-of-court declaration properly admitted pursuant to Mil.R. Evid. 804(b)(5). Where, as here, no evi-

dence exists to contradict such inculpatory evidence, the out-of-court declaration alone is sufficient to support guilty findings as to both specifications.

■ Charge I, Specification 2, the only specification that does not rely to some degree on one of the out-of-court declarations admitted pursuant to the residual exception to the hearsay rule is, nevertheless, still dependent in part, upon yet another out of court statement by the victim. Here, a statement made by the victim to a social worker during a counseling session related to, and stemming from, the offenses, was properly reiterated by the social worker at trial "not to prove the truth of the matters stated therein but for the evidence's tendency, if any, to corroborate" the accused's confession to this offense. Thus corroborated, the accused's confession, alone, is sufficient to support the court's guilty finding.

Charge II, Specification 1, and Charge II, Specification 3, are both supported, not only by properly admitted out-of-court declarations of the respective victims, but, also, by the accused's confessions. Charge II, Specification 4, is supported by the properly admitted out-of-court declaration of the victim, two properly admitted eyewitness out-of-court declarations of the victim's mother (one admitted pursuant to Mil. R.Evid. 804(b)(5) and one, pursuant to Mil. R.Evid. 803(2)), and the accused's confession. The evidence in each of these specifications, too, is therefore sufficient to support the guilty findings.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge with whom FORAY, Senior Judge joins, concurring in the result:

Contrary to the impression created by the lead opinion there has developed in the Courts of Military Review a significant body of jurisprudence interpreting and applying the residual hearsay exception of Mil.R.Evid. 803(24) and 804(b)(5). *United*

*States v. Crayton,* 17 M.J. 932 (A.F.C.M.R. 1984); *United States v. White,* 17 M.J. 953 (A.F.C.M.R.1984); *United States v. Ruffin,* 12 M.J. 952 (A.F.C.M.R.), *pet. denied,* 13 M.J. 494 (1982); *United States v. Thornton,* 16 M.J. 1011 (A.C.M.R.1983); *United States v. King,* 16 M.J. 990 (A.C.M.R.1983); *United States v. Whalen,* 15 M.J. 872 (A.C. M.R.1983); *accord United States v. Powell,* 17 M.J. 975 (A.F.C.M.R.1984); *see also United States v. Whitney,* 18 M.J. 700, n. 2 (A.F.C.M.R.1984).

The underlying test for the admissibility of statements such as those under review is whether they have the "equivalent circumstantial guarantees of trustworthiness" as stated in the Military Rules of Evidence. If a statement meets this threshold and otherwise fulfills the requirements set out in the Rules, it is within the discretion of the trial judge to admit such a statement. The President has the authority to create a new exception to the hearsay rules without violating constitutional rights, where there is a necessity for it and where it is supported by an adequate basis for concluding that the evidence has those qualities of reliability and trustworthiness attributed to the other exceptions to the hearsay rule. Article 36, U.C.M.J., 10 U.S.C. § 836; *United States v. Ruffin, supra.* In *Ruffin, supra,* we stated the purpose behind the residual hearsay exception is to encourage the growth and development of the law of evidence by giving the courts the flexibility to deal with new evidentiary situations. This flexibility includes a societal interest in protecting children from sexual assault. This is particularly so where the child may be subjected to intensive *paterfamilias* pressure not to testify concerning what took place.

The circumstantial guarantees of trustworthiness that were present in *Ruffin, supra,* are also present here. The trial judge did not abuse his discretion in admitting the challenged statements. *United States v. Ruffin, supra; accord United States v. Crayton, supra.*

I must, however, disassociate myself from the penultimate paragraph of Judge

Miller's opinion that suggests that a statement offered "not to prove the truth of the matters stated therein" may nevertheless be considered to corroborate a confession. I find, in any case, ample evidence in the record to corroborate the accused's admission of sexual misconduct with his daughter as alleged in Specification 2 of Charge I. For the reasons stated, I concur in the result reached in the principal opinion.